UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTIN S. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-00916-JMS-DKL |
| | ) | |
| BAYSIDE WOODS, HOA INC., | ) | |
| COMMUNITY ASSOCIATION SERVICES | ) | |
| OF INDIANA, | ) | |
| PAYLEASE WEB, | ) | |
| EADS, MURRAY AND PUGH PC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Presently pending before the Court are Defendant Bayside Woods, HOA Inc.'s ("Bayside")

Motion to Dismiss, [Filing No. 22], and Defendant Eads, Murray and Pugh, PC's ("EMP") Motion

for Judgment on the Pleadings, [Filing No. 26], on *pro se* Plaintiff Kristin S. Hill's Fair Debt

Collection Practices Act ("FDCPA") claims, [Filing No. 4].  Ms. Hill opposes both motions.

[Filing No. 34; Filing No. 45.]  For the reasons that follow, the Court grants the pending motions.

[Filing No. 22; Filing No. 26.]

## I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(quoting Fed. R. Civ. Pro. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson,*

551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion for judgment on the pleadings under Rule 12(c) "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When a plaintiff "pleads [herself] out of court by making allegations sufficient to defeat the suit," dismissal under Rule 12 is appropriate. *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007).

## II.
### RELEVANT BACKGROUND

The following background is set forth pursuant to the applicable standards, accepting all well-pled factual allegations against Bayside Woods and EMP from Ms. Hill's Amended Complaint as true. Ms. Hill did not attached any exhibits to her Complaint or Amended Complaint. [Filing No. 1; Filing No. 4.] Thus, all representations regarding the contents of the Bayside Woods homeowners' covenants and Ms. Hill's correspondence with various individuals are based exclusively on Ms. Hill's allegations and accepted as true for these motions.

In March 2012, Robert Ritter purchased a Bayside Woods condominium in Carmel. [Filing No. 4 at 2.]  Prior to closing, Mr. Ritter was provided a copy of the Declaration of the Covenants, Conditions & Restrictions at Bayside Woods (the "Covenants"). [Filing No. 4 at 2.]  Mr. Ritter's daughter—Ms. Hill—moved her belongings into the condominium shortly thereafter, but she did not live in it until late May 2012. [Filing No. 4 at 2.]  On April 23, 2012, Bayside Woods "sent Ritter a letter stating that their BBQ grill had damaged the siding of the building around the patio area and therefor it was their responsibility to have it repaired." [Filing No. 4 at 2.]  Ms. Hill contacted Meredith Reese, the community manager, "to inform her that the BBQ grill on the patio was not theirs; it was left by the prior owner . . . ." [Filing No. 4 at 2.]  Ms. Reese asked Ms. Hill to put her dispute in writing, and she did. [Filing No. 4 at 2-3.]  Specifically, Ms. Hill stated that the BBQ grill belonged to the previous owner, she did not use it, and no one lived in the condominium until after Bayside Woods sent the first letter about it. [Filing No. 4 at 3.]  Ms. Hill concludes that "[t]herefore, we are not responsible for the upkeep of the outside of the building and we did not cause the damage." [Filing No. 4 at 3.]

On September 8, 2012, Ms. Hill found that the damaged siding had been repaired. [Filing No. 4 at 3.]  She contacted Ms. Reese, who responded, "Sorry for the delay in responding.  The Board determined the repair would still be your responsibility.  We will be sending you a letter shortly with the information; if you are in disagreement you are certainly welcome to petition again." [Filing No. 4 at 3.]  In a subsequent communication, Ms. Reese told Ms. Hill that the Board vote had been unanimous and that "[t]he damage is the owner's responsibility." [Filing No. 4 at 3.]

On October 24, 2012, Bayside Woods "sent Ritter an invoice for $355.48" and a letter stating:

> Enclosed is Invoice 94967 for a CASI maintenance service call to replace the siding damaged by the heat of a BBQ grill. Since the issue was deemed an "owner responsibility" the Association is not responsible for payment of this service. The total amount due is $355.48. This charge [h]as been applied to your homeowner account.

[Filing No. 4 at 4.] Ms. Hill petitioned, citing the Covenants, which provide as follows:

> [T]he Association shall provide exterior maintenance upon each lot which is subject to assessment hereunder, as follows: . . . exterior building surfaces and other exterior improvements. . . . In the event that the need for maintenance or repair is caused through the willful or negligent act of the owner, his family, guests, or invitees, the cost of such maintenance or repairs shall be added to and become a part of the assessment of which such Lot is subject.

[Filing No. 4 at 4.] Ms. Hill's letter to Bayside Woods states that it "has not provided any reasonable basis for its conclusion that we are responsible for the costs of repairing the damage regardless of whether we caused the damage or even that the damage was caused by a grill. If the Association believes that the prior owners did cause the damage the Association had the opportunity to notify them of the damage and repair it at their expense if they didn't challenge that . . . ." [Filing No. 4 at 4.] On November 27, 2012, Ms. Hill sent a notarized affidavit to Ms. Reese stating that "at no time had I, the owner, a family member, guest or invitee even used the grill" before Bayside Woods sent the April 2012 letter. [Filing No. 4 at 5.]

Bayside Woods responded, standing by its initial decision and stating "this decision is final and the charges stand as originally submitted. Please make check payable to Bayside Woods HOA . . . no later than December 14, 2012." [Filing No. 4 at 5.] After that time, Bayside Woods sent "numerous letters reminding her and Ritter that the Account History had a past due balance." [Filing No. 4 at 5.]

Sometime after March 11, 2016, Ms. Hill received or took possession of a letter from EMP—Bayside Woods' attorney—that it "sent Ritter notifying him of their intent to file a lawsuit

unless he either pays the total amount specified in the letter or makes payment arrangements satisfactory to their client which would include the disputed charge for the repair of the damaged siding and late fees for nonpayment of it." [Filing No. 4 at 15.]  Within thirty days, Ms. Hill sent EMP a letter disputing various portions of the Account History Report included with EMP's letter, including the "October 24, 2012 assessment in the amount of $355.06 special assessment" and the "late fees assessed for the non-payment" of the special assessment.  [Filing No. 4 at 16.]

EMP responded that "because Hill is not the owner of the Condo and her brother has power of attorney over her father she has been informed by the law firm of the attorneys that the dispute notice and request for verification (or proof of debt) she sent the attorneys will not be considered and therefore she will not be receiving proof of the debt as requested." [Filing No. 4 at 16.]  The person Ms. Hill spoke with at EMP "acknowledged that she had been living at the condo and responding to the issues until this point but because her brother—not she—has power of attorney they will be communicating with him only." [Filing No. 4 at 16.]  Ms. Hill acknowledges that on April 12, 2016, EMP received the full payment for the disputed amount of debt from Mr. Ritter's power of attorney.  [Filing No. 45 at 6.]

On April 22, 2016, Ms. Hill filed a Complaint in this Court, alleging FDCPA claims against various parties.[1]  [Filing No. 1.]  Bayside and EMP have now filed motions asking that Ms. Hill's claims against them be dismissed.  [Filing No. 22; Filing No. 26.]  Those motions are now fully briefed and ready for the Court's review.

---

[1] Ms. Hill's Amended Complaint also asserts FDCPA claims against Defendants Community Association Services of Indiana ("CASI") and Paylease Web ("Paylease"). [Filing No. 4.] CASI is now represented by counsel and will respond to Ms. Hill's complaint by October 16, 2016. [Filing No. 51.] The Court designated the Clerk to issue process to Paylease, and a Return of Service was filed on September 27, 2016. [Filing No. 52.] The Court will address Ms. Hill's claims against CASI and Paylease at the appropriate time.

## III.
### DISCUSSION

Ms. Hill alleges that Bayside Woods and EMP violated 15 U.S.C. § 1692e(2) of the FDCPA by misrepresenting the debt at issue. [Filing No. 4 at 17-21.] She challenges the merits of Bayside Woods' decision regarding the debt, contending that "[a]bsolutely no basis was given to support this decision." [Filing No. 4 at 17-18.] She contends that Bayside Woods utilized misleading and deceptive techniques by attempting to collect a past due balance that she never agreed was valid, without providing a basis for doing so, and without pursuing a lawsuit regarding its allegation that the Covenants were breached. [Filing No. 4 at 18-19.] Ms. Hill argues that EMP threatened to sue if the total amount specified was not paid, which was improper because "[t]here has been no proof of debt established." [Filing No. 4 at 20.] She contends that the Covenants do not support Bayside Woods' allegedly "random decision that they can assess the cost to Ritter regardless of whether Ritter or his friends, family, etc. caused the damage because they failed to assess it to the owners of record when the damage occurred." [Filing No. 4 at 21.]

In moving to dismiss her FDCPA claim against it, Bayside Woods argues that Ms. Hill lacks standing to pursue such a claim. [Filing No. 23 at 1.] It emphasizes that it was Mr. Ritter's obligation to satisfy the debt at issue, not Ms. Hill's, and that the FDCPA does not provide relief for parties that are not obligated to pay the amount that is due. [Filing No. 23 at 10.] Bayside Woods emphasizes that all fees and charges were billed to Mr. Ritter's account and that although Ms. Hill made some payments on Mr. Ritter's behalf, she had no obligation to do so and her brother actually has power of attorney over Mr. Ritter. [Filing No. 23 at 7-10.] Because Mr. Ritter is not a party to this action and Bayside Woods argues that Ms. Hill cannot pursue an FDCPA claim on his behalf, it asks the Court to dismiss Ms. Hill's FDCPA claim against it. [Filing No. 23 at 6-10.]

EMP makes similar arguments to Bayside Woods in its motion.  [Filing No. 26; Filing No. 27.]  It emphasizes that it had no involvement with the disputed debt until March 2016, "when it was retained to collect the disputed assessments from Robert Ritter." [Filing No. 27 at 1.]  EMP points out that its notice was not directed to Ms. Hill, that she was not the owner of the property at issue, and that her brother had power of attorney for Mr. Ritter.[2]  [Filing No. 27 at 1-2.]

In response to the pending motions, Ms. Hill argues that she has standing to pursue FDCPA claims against Bayside Woods and EMP.  [Filing No. 34; Filing No. 45.]  She contends that because Bayside Woods invoked the provision of the Covenants that held Mr. Ritter responsible for the damage based on his family or guests causing the damage, she has standing to challenge their attempts to collect the debt at issue.  [Filing No. 34 at 6-7.]  She claims that the "decision to assess the charges to Ritter's account was baseless and nothing more than its opinion as to who it thought should pay the costs to repair the damaged siding and not who *was* obligated to pay the costs to repair it under the Declaration.  [Bayside Woods] was obviously not qualified to make that legal decision."  [Filing No. 45 at 14 (original emphasis).]  Ms. Hill also claims that Mr. Ritter "was not injured by the attempted collections" and that "[o]nly she was" because she was making certain payments and allegedly incurred banking fees as a result.[3]  [Filing No. 34 at 8-9.]  Ms. Hill relies on Seventh Circuit precedent holding that people other than those owing the debt at issue

---

[2] EMP also contends that to the extent Ms. Hill's FDCPA claim is based on EMP's refusal to validate the debt at issue to Ms. Hill, only a consumer can request verification or validation of a debt and Ms. Hill was neither the consumer nor Mr. Ritter's power of attorney.  [Filing No. 27 at 4-5 (citing 15 U.S.C. § 1692g).]  In response, Ms. Hill emphasizes that she is pursuing a claim against EMP because it "misrepresented the debt under *15 U.S.C. § 1692e(2)*." [Filing No. 45 at 12 (original emphasis).]  Because Ms. Hill is not pursuing an FDCPA claim against EMP pursuant to 15 U.S.C. § 1692g, the Court will not address that provision further.

[3] To the extent that Ms. Hill makes allegations against CASI and Paylease regarding the online web payments and banking fees she alleges she incurred as a result, those allegations are not at issue in the pending motions filed by Bayside Woods and EMP and will not be addressed.

may pursue FDCPA claims.  [Filing No. 34 at 10 (relying on *Todd v. Collecto, Inc.*, 731 F.3d 734 (7th Cir. 2013)).]  She contends that she had implied authority to act on Mr. Ritter's behalf and that because she was "necessarily involved in resolving the issue because she was the only person who lived in the condo," she has standing to pursue her FDCPA claims.  [Filing No. 34 at 10-12.]

In reply, Bayside Woods maintains that Ms. Hill does not have standing to pursue an FDCPA claim against it because, among other things, Ms. Hill is not a "consumer" as defined by the FDCPA.[4]  [Filing No. 46 at 2-3.]  It emphasizes that "[s]he has failed to assert her *own* legal rights and interests, and cannot rest any claim for relief on that of a third-party, i.e., Mr. Ritter." [Filing No. 46 at 3 (original emphasis).]  To the extent Ms. Hill relies on her familial relationship with Mr. Ritter to support her ability and implied authority to interact with Bayside Woods on the debt at issue, Bayside Woods emphasizes that Ms. Hill's FDCPA claim is brought on her own behalf.  [Filing No. 46 at 4.]  In its reply, EMP emphasizes the limited scope of its involvement with collecting the debt at issue, that there is no dispute that its notice was directed at Mr. Ritter, and that there is no dispute that the debt at issue was owed by Mr. Ritter.  [Filing No. 47 at 2-3.]

One purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  The provision of the FDCPA on which Ms. Hill relies for her claims against Bayside Woods and EMP—15 U.S.C. § 1692e—"forbids a debt collector to 'use

---

[4] Bayside Woods argues for the first time on reply that Ms. Hill's claim fails because Bayside Woods is allegedly not a "debt collector" under 15 U.S.C. § 1692a(6).  [Filing No. 46 at 3.]  The Court will not address this argument because Bayside Woods did not present it in its opening brief. *See Darif v. Holder*, 739 F.3d 329, 336-37 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived.").  Bayside Woods also waived this argument by not adequately developing it, given that it cites nothing other than the statute defining "debt collector" and does not quote or apply the language of that statute to Ms. Hill's allegations.  *See Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010) ("The failure to adequately develop and support these arguments results in waiver.").

any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) (quoting 15 U.S.C. § 1692e). This includes the false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2). The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Construing the same FDCPA provision on which Ms. Hill relies for her claims against Bayside Woods and EMP, the Seventh Circuit Court of Appeals concluded that "when read in light of the Act's purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (citing 15 U.S.C. § 1692e ("The Act is meant 'to protect consumers against debt collection abuses.'")). The term "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Seventh Circuit emphasized that because the purpose of the FDCPA is to protect consumers, "[n]aturally we have used that understanding of the Act to interpret § 1692e, holding that to be actionable a misleading statement must have the ability to influence a *consumer's* decision." *O'Rourke*, 635 F.3d at 942 (original emphasis). The Seventh Circuit concluded that § 1692e "does not extend its protection beyond the consumer; there is no reference to anyone else in the process who may have a consequential, let alone extremely consequential role in the debt-collection process." *Id.* at 943. "Thus, the Act is limited to protecting consumers and those who have a special relationship with the consumer—

9

such that the Act is still protecting the consumer—from statements that would mislead these consumers. The Act is not similarly interested in protecting third parties." *Id.*

Based on the applicable language in *O'Rourke*, the Court must conclude that Ms. Hill's FDCPA claim against Bayside Woods and EMP based on 15 U.S.C. § 1692e fails as a matter of law because there is no dispute that Ms. Hill was not the "consumer" for purposes of the debt at issue. Ms. Hill's own allegations confirm that Mr. Ritter was the owner of the condominium, that the communications from Bayside Woods and EMP were directed at him, and that the debt at issue was his obligation. Thus, Mr. Ritter was the "consumer" for purposes of the portion of the FDCPA at issue. To the extent that Ms. Hill interacted with Bayside Woods or EMP about the debt, it is beyond dispute that she did so voluntarily. Although 15 U.S.C. § 1692e may protect "those who have a special relationship with the consumer," *O'Rourke*, 635 F.3d at 943, Ms. Hill's complaint confirms that her brother was Mr. Ritter's power of attorney, [Filing No. 4 at 16]. Thus, to the extent anyone other than Mr. Ritter had the type of special relationship needed to bring an FDCPA claim pursuant to 15 U.S.C. § 1692e on Mr. Ritter's behalf, under these circumstances it would be Mr. Ritter's power of attorney, not Ms. Hill.[5]

The Court acknowledges that after *O'Rourke*, the Seventh Circuit recognized that the "broad language" of that decision, "if taken out of context, could be read to say that only a 'consumer' (*i.e.*, a debtor or alleged debtor) can have a claim for relief" under the FDCPA. *Todd,*

---

[5] Ms. Hill argues that she had implied authority to act on Mr. Ritter's behalf and cites "recently discovered evidence" that Mr. Ritter designated her to act on his behalf at the annual Bayside Woods homeowners meeting. [Filing No. 45 at 20.] As an initial matter, the Court does not consider evidence outside the pleadings when ruling on the types of motions at issue. *See* Fed. R. Civ. Pro. 12(d). Moreover, although Ms. Hill alleges that EMP did not know that her brother was Mr. Ritter's power of attorney until 2016, she has not alleged that her brother was not Mr. Ritter's power of attorney during the entire relevant time period.

731 F.3d at 736-37. The Seventh Circuit clarified that "each provision of the FDCPA must be analyzed individually to determine who falls within the scope of its protection and thus to decide with respect to whom the provision can be violated." *Id.* at 738. It emphasized that "[i]n *O'Rourke*, this court addressed only § 1692e . . . [and t]he broad language in the opinion must be understood in that context." *Id.* at 738. The Seventh Circuit did not overrule *O'Rourke*, however, and the underlying premise stands with regard to claims brought pursuant to § 1692e. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) (stating that "[p]ortions of § 1692e are drafted in broad terms" and that "[f]or such claims, [the Court] must assess allegedly false or misleading statements to determine whether they could have any practical impact on *a consumer's* rights or decision-making process") (emphasis added). Because Ms. Hill is pursuing her FDCPA claims against Bayside Woods and EMP pursuant to the same provision of the FDCPA at issue in *O'Rourke*, the Court must conclude as a matter of law that these claims fail because she is not the "consumer" of the debt at issue.

Although the Court has concluded that Ms. Hill's FDCPA claims against Bayside Woods and EMP fail as a matter of law for the reasons stated herein, it will also address two flawed premises underlying her allegations. First, throughout her Amended Complaint and briefs, Ms. Hill primarily challenges the merits of the underlying debt Bayside Woods and EMP sought to collect. The FDCPA "regulates the practices used to collect a debt . . . irrespective of whether a valid debt actually exists." *Adair v. Sherman*, 230 F.3d 890, 895-96 (7th Cir. 2000) ("The FDCPA regulates the practices used to collect a debt . . . [and] is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.") (citations omitted). In other words, at issue in this lawsuit is the manner in which Bayside Woods and EMP attempted to collect the debt, not the validity of the underlying debt itself. Second, it is

11

apparent from Ms. Hill's allegations that she believes that to send letters or attempt to collect the debt at issue, Bayside Woods or EMP must have previously received a legal judgment in their favor regarding the validity of the debt. But the FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, *whether or not such obligation has been reduced to judgment*." 15 U.S.C. § 1692a(5) (emphasis added). Thus, the fact that Bayside Woods or EMP attempted to collect the debt at issue before obtaining a legal judgment regarding its validity is inconsequential.

For the reasons stated herein, the Court concludes that Ms. Hill's FDCPA claims against Bayside Woods and EMP pursuant to 15 U.S.C. § 1692e fail as a matter of law. Any attempt by Ms. Hill to amend her allegations against Bayside Woods and EMP would be futile based on her own allegations which, accepted as true, plead her out of court in light of the binding precedent cited herein. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (holding that "[w]here it is clear that the defect cannot be corrected so that amendment is futile," leave to amend may be denied). Thus, Ms. Hill's claims against Bayside Woods and EMP are dismissed with prejudice.

## IV.
### CONCLUSION

For the reasons stated herein, the Court grants Bayside Woods' and EMP's motions regarding Ms. Hill's FDCPA claims against them pursuant to 15 U.S.C. § 1692e. [Filing No. 22; Filing No. 26.] Thus, Ms. Hill's FDCPA claims against Bayside Woods and EMP are **DISMISSED WITH PREJUDICE**. Because FDCPA claims against two other Defendants are still pending in this action, final judgment will not issue at this time.

Date: 10/4/2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via US Mail:**

KRISTIN S. HILL
6412 Bay Vista Court
Indianapolis, IN 46250

**Distribution via CM/ECF:**

John W. Richards
BUNGER & ROBERTSON
jwr@lawbr.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com

Thomas R. Schultz
SCHULTZ & POGUE LLP
tschultz@schultzpoguelaw.com

Jonathan Lawrence Bucher, Jr.
SCHULTZ & POGUE LLP
jbucher@schultzpoguelaw.com