UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTIN S. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-00916-JMS-DKL |
| | ) |
| BAYSIDE WOODS, HOA INC., | ) |
| COMMUNITY ASSOCIATION SERVICES | ) |
| OF INDIANA, | ) |
| PAYLEASE WEB, | ) |
| EADS, MURRAY AND PUGH PC, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Presently pending before the Court are Defendant Community Association Services of Indiana's ("CASI") Motion to Dismiss, [Filing No. 59], and Defendant PayLease Web's ("PayLease") Motion to Dismiss, [Filing No. 62], *pro se* Plaintiff Kristin S. Hill's Fair Debt Collection Practices Act ("FDCPA") claims, [Filing No. 4]. Ms. Hill asserts FDCPA claims against CASI and PayLease for their actions related to debt incurred for damage to the siding of the condominium where Ms. Hill resides, which is owned by her father.[1] For the reasons that follow, the Court grants the pending motions to dismiss. [Filing No. 59; Filing No. 62.]

---

[1] Ms. Hill also asserted FDCPA claims against Defendant Bayside Woods, HOA, Inc. ("Bayside Woods") and Defendant Eads, Murray and Pugh PC ("EMP"), [Filing No. 4], but the Court previously granted those parties' Motions to Dismiss and dismissed Ms. Hill's FDCPA claims against them with prejudice. [Filing No. 53.] Final judgment has not yet been entered on those claims. [Filing No. 53 at 12.]

# I.
## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### RELEVANT BACKGROUND[2]

The following background is set forth pursuant to the applicable standards, accepting all well-pled factual allegations against CASI and PayLease from Ms. Hill's Amended Complaint as true. Ms. Hill did not attach any exhibits to her Complaint or Amended Complaint. [Filing No. 1; Filing No. 4.] Thus, all representations regarding the contents of the Bayside Woods homeowners' covenants and Ms. Hill's correspondence with various individuals are based exclusively on Ms. Hill's allegations and accepted as true for purposes of these motions.

In March 2012, Robert Ritter purchased a Bayside Woods condominium in Carmel. [Filing No. 4 at 2.] Prior to closing, Mr. Ritter was provided a copy of the Declaration of the Covenants, Conditions & Restrictions at Bayside Woods (the "Covenants"). [Filing No. 4 at 2.] Mr. Ritter's daughter—Ms. Hill—moved her belongings into the condominium shortly thereafter, but she did not live in it until late May 2012. [Filing No. 4 at 2.] On April 23, 2012, Bayside Woods "sent Ritter a letter stating that their BBQ grill had damaged the siding of the building around the patio area and therefore it was their responsibility to have it repaired." [Filing No. 4 at 2.] Ms. Hill contacted Meredith Reese, the community manager, "to inform her that the BBQ grill on the patio was not theirs; it was left by the prior owner . . . ." [Filing No. 4 at 2.] Ms. Reese asked Ms. Hill to put her dispute in writing, and she did. [Filing No. 4 at 2-3.] Specifically, Ms. Hill stated that the BBQ grill belonged to the previous owner, she did not use it, and no one lived in the condominium until after Bayside Woods sent the first letter about it. [Filing No. 4 at 3.] Ms. Hill

---

[2] Portions of this section are taken from the background set forth in the Court's previous Order granting motions to dismiss filed by Bayside Woods and EMP. [Filing No. 53 at 2-5.] Ms. Hill's allegations against those parties are necessary to put her allegations against CASI and PayLease into context. However, the actions of Bayside Woods and EMP set forth herein will not be imputed to CASI and PayLease, and even if they were, the Court has already found them insufficient to state the FDCPA claim Ms. Hill alleges.

3

concludes that "[t]herefore, we are not responsible for the upkeep of the outside of the building and we did not cause the damage." [Filing No. 4 at 3.]

On September 8, 2012, Ms. Hill found that the damaged siding had been repaired. [Filing No. 4 at 3.] She contacted Ms. Reese, who responded, "Sorry for the delay in responding. The Board determined the repair would still be your responsibility. We will be sending you a letter shortly with the information; if you are in disagreement you are certainly welcome to petition again." [Filing No. 4 at 3.] In a subsequent communication, Ms. Reese told Ms. Hill that the Board vote had been unanimous and that "[t]he damage is the owner's responsibility." [Filing No. 4 at 3.]

On October 24, 2012, Bayside Woods "sent Ritter an invoice for $355.48" and a letter stating:

> Enclosed is Invoice 94967 for a CASI maintenance service call to replace the siding damaged by the heat of a BBQ grill. Since the issue was deemed an "owner responsibility" the Association is not responsible for payment of this service. The total amount due is $355.48. This charge [h]as been applied to your homeowner account.

[Filing No. 4 at 4.] Ms. Hill petitioned, citing the Covenants, which provide as follows:

> [T]he Association shall provide exterior maintenance upon each lot which is subject to assessment hereunder, as follows: . . . exterior building surfaces and other exterior improvements. . . . In the event that the need for maintenance or repair is caused through the willful or negligent act of the owner, his family, guests, or invitees, the cost of such maintenance or repairs shall be added to and become a part of the assessment of which such Lot is subject.

[Filing No. 4 at 4.] Ms. Hill's letter to Bayside Woods states that it "has not provided any reasonable basis for its conclusion that we are responsible for the costs of repairing the damage regardless of whether we caused the damage or even that the damage was caused by a grill. If the Association believes that the prior owners did cause the damage the Association had the opportunity to notify them of the damage and repair it at their expense if they didn't challenge

that . . . ." [Filing No. 4 at 4.] On November 27, 2012, Ms. Hill sent a notarized affidavit to Ms. Reese stating that "at no time had I, the owner, a family member, guest or invitee even used the grill" before Bayside Woods sent the April 2012 letter. [Filing No. 4 at 5.]

Bayside Woods responded, standing by its initial decision and stating "this decision is final and the charges stand as originally submitted. Please make check payable to Bayside Woods HOA . . . no later than December 14, 2012." [Filing No. 4 at 5.] After that time, Bayside Woods sent "numerous letters reminding her and Ritter that the Account History had a past due balance." [Filing No. 4 at 5.]

CASI provides an array of maintenance services and resources. [Filing No. 4 at 2.] In October 2014, CASI sent Mr. Ritter a letter stating as follows:

> By your signature below, this letter shall constitute your agreement to bring your account with Bayside Woods, HOA, Inc. in accordance with the stated terms. Please sign and date as indicated and return this letter to us. A copy of this agreement is enclosed for your records.
>
> I agree to bring my account current with Bayside Woods, HOA, which I acknowledge is past due as this letter in the amount of $519.21. The terms of the agreement are as follows: I understand that my failure to comply with these terms will result in the revocation of this payment plan by the Board of Directors, in which case collection proceedings shall immediately commence.

[Filing No. 4 at 6.] Ms. Hill called Bayside Woods' office and questioned the balance, stating that it should only be $355.48. [Filing No. 4 at 6.]

On October 29, 2014, Mr. Ritter received a letter from CASI stating that the previous letter "was mistakenly sent to your attention" and directing him to "please disregard the letter you received." [Filing No. 4 at 6-7.] On the reverse side "was a letter informing Ritter of the appropriate payment methods." [Filing No. 4 at 7.] Before receiving the letter, Ms. Hill had always deposited a money order for the $185 monthly assessment in an office deposit box in Carmel. [Filing No. 4 at 7.] The letter listed the following payment methods: "Autopay; paying

online 24/7 and payments by mail to the Arizona office addressed to Bayside Woods HOA, Inc." [Filing No. 4 at 7.]

From December 2014 until April 2015, Ms. Hill paid the monthly Bayside Woods assessment online through the PayLease portal, paying only the $185 monthly assessment and leaving the amount of the special assessment for the repair of the damaged siding unpaid. [Filing No. 4 at 7-8.] On April 15, 2015,[3] Ms. Hill twice attempted to pay just the $185 monthly assessment through the PayLease portal "but the computer automatically took the entire balance for deduction from her bank account without having given her an opportunity to confirm or not confirm the payment." [Filing No. 4 at 8.] Ms. Hill unsuccessfully tried to cancel the payments and subsequently contacted Bayside Woods. [Filing No. 4 at 8-9.] On April 22, 2015, two $25 NSF fees for returned payments were deducted from her bank account. [Filing No. 4 at 10.] Ms. Hill successfully disputed those fees with her bank, and she opened a new bank account to prevent Bayside Woods from withdrawing additional funds. [Filing No. 4 at 10-11.]

Sometime after March 11, 2016, Ms. Hill received or took possession of a letter from EMP—Bayside Woods' attorney—that it "sent Ritter notifying him of their intent to file a lawsuit unless he either pays the total amount specified in the letter or makes payment arrangements satisfactory to their client which would include the disputed charge for the repair of the damaged siding and late fees for nonpayment of it." [Filing No. 4 at 15.] Within thirty days, Ms. Hill sent EMP a letter disputing various portions of the Account History Report included with EMP's letter, such as the "October 24, 2012 assessment in the amount of $355.06 special assessment" and the "late fees assessed for the non-payment" of the special assessment. [Filing No. 4 at 16.]

---

[3] Ms. Hill's Amended Complaint alleges "April 15, 2014," but this appears to be a scrivener's error given the timing of the events of which she complains. [Filing No. 4 at 8.]

6

EMP responded that "because Hill is not the owner of the Condo and her brother has power of attorney over her father she has been informed by the law firm of the attorneys that the dispute notice and request for verification (or proof of debt) she sent the attorneys will not be considered and therefore she will not be receiving proof of the debt as requested." [Filing No. 4 at 16.] The person Ms. Hill spoke with at EMP "acknowledged that she had been living at the condo and responding to the issues until this point but because her brother—not she—has power of attorney they will be communicating with him only." [Filing No. 4 at 16.] Ms. Hill has acknowledged that on April 12, 2016, EMP received the full payment for the disputed amount of debt from Mr. Ritter's power of attorney. [Filing No. 45 at 6.]

On April 22, 2016, Ms. Hill filed a Complaint in this Court. [Filing No. 1.] An Amended Complaint asserts FDCPA claims against various parties, including CASI and PayLease. [Filing No. 4.] CASI and PayLease have both filed motions asking that Ms. Hill's claims against them be dismissed. [Filing No. 59; Filing No. 62.]

Ms. Hill did not file a timely response to PayLease's Motion to Dismiss, [Filing No. 73], but she did file a timely response to CASI's Motion to Dismiss, [Filing No. 67]. After CASI filed its reply brief, Ms. Hill filed three motions asking to strike CASI's reply brief for allegedly making improper arguments. [Filing No. 74; Filing No. 75; Filing No. 76.] These motions make substantive arguments in support of Ms. Hill's position and are more properly characterized as attempts to have the last word by filing a surreply brief. This District's Local Rules do not contemplate a surreply brief in any context other than on summary judgment, and then only if the movant cites new evidence in its reply brief or asks to strike an argument in the non-movant's response brief. L.R. 56-1(d), *available at* United States District Court, Southern District of Indiana, Local Rules, http://www.insd.uscourts.gov/sites/insd/files/Local%20Rules%2012-1-

16.pdf (last visited February 9, 2017). CASI did not ask to strike any of Ms. Hill's response arguments or cite new evidence in its reply brief. Thus, Ms. Hill's attempts to file an improper surreply brief must be denied. [Filing No. 74; Filing No. 75; Filing No. 76.] The Court will now consider the merits of the pending motions.

## III.
### DISCUSSION

Ms. Hill asserts an FDCPA claim against CASI pursuant to 15 U.S.C. § 1692e(2) for allegedly misrepresenting the debt at issue. [Filing No. 4 at 17-21.] She also asserts an FDCPA claim against CASI and PayLease pursuant to 15 U.S.C. § 1692f(1) for their actions surrounding her attempts to pay an amount less than the full balance online. [Filing No. 4 at 21-22.] The Court will separately address Ms. Hill's claims pursuant to 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692f(1).

**A. FDCPA Claim against CASI Pursuant to 15 U.S.C. § 1692e(2)**

CASI argues that Ms. Hill lacks standing to pursue an FDCPA claim against it. [Filing No. 60 at 5-8.] It emphasizes that all assessed fees were only charged to Mr. Ritter and that it was his obligation to satisfy the debt at issue since he owned the condo. [Filing No. 60 at 5-8.] Even if Ms. Hill has standing to bring her claim, CASI argues that her FDCPA claim against it is precluded by prudential limitations because she really is attempting to bring a claim on behalf of a third-party. [Filing No. 60 at 8-10.] Finally, CASI emphasizes that "there is no debt attributed to Ms. Hill that CASI has attempted to collect." [Filing No. 60 at 10.]

In response, Ms. Hill focuses on her other FDCPA claim against CASI pursuant to 15 U.S.C. § 1692f. [Filing No. 67 at 9-14 (citing 15 U.S.C. § 1692f).] She also contends that she had implied authority to act on Mr. Ritter's behalf because she was the only person who lived in the condo, she received a lot of the letters, and she made the payments. [Filing No. 67 at 14-21.]

Thus, Ms. Hill argues that she has standing to pursue her FDCPA claims. [Filing No. 67 at 14-21.]

In reply, CASI points out that Ms. Hill "makes no argument that her claim under 15 U.S.C. § 1692e(2) should not properly be dismissed." [Filing No. 71 at 1.]

One purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The provision of the FDCPA on which Ms. Hill relies for her claim against CASI pursuant to 15 U.S.C. § 1692e "forbids a debt collector to 'use any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) (quoting 15 U.S.C. § 1692e). This includes the false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2). The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

While construing 15 U.S.C. § 1692e, the Seventh Circuit Court of Appeals concluded that "when read in light of the Act's purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (citing 15 U.S.C. § 1692e ("The Act is meant 'to protect consumers against debt collection abuses.'")). The term "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Seventh Circuit emphasized that because the purpose of the FDCPA is to protect consumers, "[n]aturally we have

9

used that understanding of the Act to interpret § 1692e, holding that to be actionable a misleading statement must have the ability to influence a *consumer's* decision." O'Rourke, 635 F.3d at 942 (original emphasis). The Seventh Circuit concluded that § 1692e "does not extend its protection beyond the consumer; there is no reference to anyone else in the process who may have a consequential, let alone extremely consequential role in the debt-collection process." Id. at 943. "Thus, the Act is limited to protecting consumers and those who have a special relationship with the consumer—such that the Act is still protecting the consumer—from statements that would mislead these consumers. The Act is not similarly interested in protecting third parties." Id.

Based on the applicable language in *O'Rourke*, the Court must conclude that Ms. Hill's FDCPA claim against CASI based on 15 U.S.C. § 1692e fails as a matter of law because there is no dispute that Ms. Hill was not the "consumer" for purposes of the debt at issue. Ms. Hill's own allegations confirm that Mr. Ritter was the owner of the condominium, that the communications from CASI were directed at him, and that the debt at issue was his obligation. Thus, Mr. Ritter was the "consumer" for purposes of the FDCPA provision at issue. To the extent that Ms. Hill interacted with CASI about the debt, it is beyond dispute that she did so voluntarily. Although 15 U.S.C. § 1692e may protect "those who have a special relationship with the consumer," O'Rourke, 635 F.3d at 943, Ms. Hill's complaint confirms that her brother was Mr. Ritter's power of attorney, [Filing No. 4 at 16]. Thus, to the extent anyone other than Mr. Ritter had the type of special relationship needed to bring an FDCPA claim pursuant to 15 U.S.C. § 1692e on Mr. Ritter's behalf, under these circumstances it would be Mr. Ritter's power of attorney, not Ms. Hill.[4]

---

[4] Ms. Hill argues that she had implied authority to act on Mr. Ritter's behalf. [Filing No. 67 at 14-21.] Because she has admitted, however, that her brother was Mr. Ritter's power of attorney, [Filing No. 4 at 16], the Court will not further address her implied authority argument.

The Court acknowledges that after *O'Rourke*, the Seventh Circuit recognized that the "broad language" of that decision, "if taken out of context, could be read to say that only a 'consumer' (*i.e.*, a debtor or alleged debtor) can have a claim for relief" under the FDCPA. *Todd, 731 F.3d at 736-37*. The Seventh Circuit clarified that "each provision of the FDCPA must be analyzed individually to determine who falls within the scope of its protection and thus to decide with respect to whom the provision can be violated." *Id.* at 738. It emphasized that "[i]n *O'Rourke*, this court addressed only § 1692e . . . [and t]he broad language in the opinion must be understood in that context." *Id.* at 738. The Seventh Circuit did not overrule *O'Rourke*, however, and the underlying premise stands with regard to claims brought pursuant to § 1692e. *See Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317, 324 (7th Cir. 2016)* (stating that "[p]ortions of § 1692e are drafted in broad terms" and that "[f]or such claims, [the Court] must assess allegedly false or misleading statements to determine whether they could have any practical impact on *a consumer's* rights or decision-making process") (emphasis added). Because Ms. Hill is pursuing one of her FDCPA claims against CASI pursuant to the same provision of the FDCPA at issue in *O'Rourke*, the Court must conclude as a matter of law that her claim against CASI pursuant to § 1692e fails as a matter of law because she is not the "consumer" of the debt at issue.

### B. FDCPA Claim Against CASI and PayLease Pursuant to 15 U.S.C. § 1692f(1)

Ms. Hill also asserts FDCPA claims against CASI and PayLease pursuant to 15 U.S.C. § 1692f(1) for their actions surrounding her attempts to pay an amount less than the full balance online. [Filing No. 4 at 21-23.] In support of its Motion to Dismiss, CASI makes the same arguments challenging Ms. Hill's standing that it did with regard to the 15 U.S.C. § 1692e claim analyzed above. [Filing No. 60.] PayLease does not challenge Ms. Hill's standing to bring an FDCPA claim pursuant to § 1692f, but it contends that her claim against it pursuant to that statute

must be dismissed because PayLease is not a "debt collector" to which that statute applies. [Filing No. 63.] PayLease also emphasizes that Ms. Hill voluntarily used its website despite other available mechanisms to pay the monthly assessment. [Filing No. 63 at 5-8.]

In response, Ms. Hill argues that she has standing to bring an FDCPA claim on her own behalf pursuant to 15 U.S.C. § 1692f. [Filing No. 67 at 12-14 (citing *Todd*, 731 F.3d at 734).] She contends that her claims against CASI and PayLease should not be dismissed because they violated 15 U.S.C. § 1692f when she "was asked to make the payments online rather than by depositing a check or money order directly into the Bayside Woods HOA deposit box at its office in Carmel" as she had been doing. [Filing No. 67 at 10-11.] Ms. Hill also alleges that the PayLease account was "set such that she was unable to pay any amount other than the entire balance on Ritter's account." [Filing No. 67 at 11.] She emphasizes that she was damaged by NSF fees that were subsequently withdrawn from her account, and that even after her bank successfully disputed them, PayLease tried to withdraw them again and Ms. Hill had to open a new bank account. [Filing No. 67 at 11.]

In its reply brief, CASI concedes that Ms. Hill may have standing to bring a claim pursuant to 15 U.S.C. § 1692f. [Filing No. 71 at 2 (citing *Todd*, 731 F.3d at 734).] CASI emphasizes, however, that Ms. Hill does not make any allegations regarding CASI in alleging the 15 U.S.C. § 1692f claim, since the allegations on which her claim rests focus on her interactions with the PayLease website. [Filing No. 71 at 2.]

15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The Seventh Circuit has held that "anyone aggrieved by a debt collector's unfair or unconscionable collection practices can fall within the

provision's zone of interest" and has standing to sue for her own injuries even if she is not the consumer from whom the debt collector sought to collect. *Todd*, 731 F.3d at 738.

PayLease does not challenge Ms. Hill's standing to bring a 15 U.S.C. § 1692f claim, and CASI abandons its standing argument on reply. Given that it is undisputed that Ms. Hill was the one who attempted to make the payments through the PayLease website, the Court concludes that pursuant to the Seventh Circuit's holding in *Todd*, Ms. Hill has standing to bring a claim pursuant to 15 U.S.C. § 1692f for conduct that she alleges was unfair or unconscionable with respect to her.

Standing alone is not enough, however, for Ms. Hill's claim to proceed past the motion to dismiss stage of litigation. Specifically, Ms. Hill's claims "may not proceed if [her] allegations do not plausibly describe a debt collection practice that was unfair or unconscionable with respect to [her]." *Todd*, 731 F.3d at 739 ("We conclude that Todd has not stated a plausible claim for relief under § 1692f. His allegations about his conversation with the [debt collector] representative are simply inadequate to support a claim that [the debt collector] subjected him to an unfair or unconscionable collection practice."). Ms. Hill contends that the allegedly unfair or unconscionable means that CASI and PayLease used to collect a debt were 1) when she "was asked to make the payments online rather than by depositing a check or money order directly into the Bayside Woods HOA deposit box at its office in Carmel" as she had been doing, and 2) "[d]ue to the attempts to take payment for the entire balance on Ritter's account from Hill's bank account rather than payment for the [$185] monthly assessment only that Hill intended to pay." [Filing No. 67 at 10-11.]

As an initial matter, the Court agrees with CASI that Ms. Hill's allegations regarding the alleged § 1692f violation focus on the conduct of PayLease, not CASI, and do not adequately allege a violation against CASI. [*See* Filing No. 4 at 21-23.] Even assuming that CASI and

13

PayLease acted together, which Ms. Hill does not allege, Ms. Hill cites no authority for the propositions that discontinuing a prior method of accepting payment or setting a payment website to not allow partial payments constitute unfair or unconscionable debt collection practices. Even if such practices can constitute unfair or unconscionable debt collection practices under certain circumstances, the Court finds that they do not as a matter of law in this case because Ms. Hill admits that there were other options for her to make the payments at issue. [Filing No. 4 at 7 ("The letter listed the following payment methods: 'Autopay; paying online 24/7 and payments by mail to the Arizona office addressed to Bayside Woods HOA, Inc.'").] While Ms. Hill may have preferred to make the partial payments online—and she admits that she did so successfully for multiple months—the Court finds as a matter of law that she has not stated a plausible claim for relief under § 1692f against either CASI or PayLease.

As a final matter, the Court also agrees with PayLease that Ms. Hill's allegations confirm that it was not acting as a "debt collector," such that it could be liable for a violation of 15 U.S.C. § 1692f. The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted *to be owed or due another*." 15 U.S.C. § 1692a(6) (emphasis added). Ms. Hill's allegations to support her 15 U.S.C. § 1692f claim focus on PayLease's attempts to collect NSF fees from her bank account, but it is undisputed that those fees would be due to PayLease, not another entity. Thus, PayLease was acting as a creditor, not a debt collector, with regard to those fees and its conduct was not covered by the FDCPA. *See McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 498 (7th Cir. 2008) ("The FDCPA covers debt collectors, not creditors, and these categories are mutually exclusive.").

For these reasons, Ms. Hill's 15 U.S.C. § 1692f claim against CASI and PayLease must be dismissed as a matter of law.

### C. Effect of Rulings

For the reasons stated herein, the Court concludes that Ms. Hill's FDCPA claims against CASI and PayLease pursuant to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f fail as a matter of law. Any attempt by Ms. Hill to amend her allegations against these parties would be futile based on her own allegations which, accepted as true, plead her out of court in light of the binding precedent cited herein. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (holding that "[w]here it is clear that the defect cannot be corrected so that amendment is futile," leave to amend may be denied). Thus, Ms. Hill's claims against CASI and PayLease are dismissed with prejudice. Given that the Court has already dismissed Ms. Hill's claims against Bayside Woods and EMP with prejudice and no other claims remain pending in this litigation, the Court will enter final judgment.

### IV.
#### CONCLUSION

Ms. Hill's attempts to strike CASI's reply brief are really an improper attempt to file a surreply brief and, as such, are **DENIED**. [Filing No. 74; Filing No. 75; Filing No. 76.] For the reasons detailed herein, CASI's Motion to Dismiss is **GRANTED**, [Filing No. 59], and Ms. Hill's FDCPA claims against CASI are **DISMISSED WITH PREJUDICE**. Likewise, PayLease's Motion to Dismiss is **GRANTED**, [Filing No. 62], and Ms. Hill's FDCPA claim against PayLease is **DISMISSED WITH PREJUDICE**. Because no other claims remain pending in this litigation, final judgment shall enter accordingly.

Date: 2/9/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via US Mail:**

KRISTIN S. HILL
6412 Bay Vista Court
Indianapolis, IN 46250

**Electronic Distribution via CM/ECF:**

John W. Richards
BUNGER & ROBERTSON
jwr@lawbr.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com

Michael E. Brown
KIGHTLINGER & GRAY LLP
mbrown@k-glaw.com

Thomas R. Schultz
SCHULTZ & POGUE LLP
tschultz@schultzpoguelaw.com

Jonathan Lawrence Bucher, Jr.
SCHULTZ & POGUE LLP
jbucher@schultzpoguelaw.com